UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| HENRY ULICE GUTIERREZ GIRON | A# 088 439 899 |
|     Petitioner | |
| v. | (Emergency Application) |
| KENNETH GENALO, NYC Director, Enforcement & Removal Operations, U.S. Immigration and Customs Enforcement; | Case No |
| TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; | |
| KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; and | |
| PAMELA BONDI, Attorney General of the United States, | |
|     Respondents. | |

---

PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2241) AND EMERGENCY MOTION FOR ORDER TO SHOW CAUSE & TEMPORARY RESTRAINING ORDER

1. Petitioner HENRY ULICE GUTIERREZ GIRON ("Petitioner"), by counsel, respectfully petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and moves for emergency relief by Order to Show Cause and Temporary Restraining Order.[1]

2. ICE seized him on January 21, 2026, while waiting outside a Mexican deli named La Guadalupana, in Pawling, NY, in a warrantless arrest.

---

[1] This petition is filed on an emergency basis to prevent the petitioners' imminent unlawful transfer or removal from this jurisdiction. DHS controls the relevant file documents and did not provide the petitioner scant access to any detention documents when it arrested him. The factual allegations here are pleaded upon information and belief, except where otherwise indicated. Petitioner reserves the right to amend and supplement this petition as more facts become available.

1

3. ICE agents approached the petitioner for the sole reason that he appeared to be Hispanic and was standing outside a Hispanic deli.

4. ICE is now detaining him without any contemporaneous, individualized custody determination as required by the Fourth Amendment, the Due Process Clause of the Fifth Amendment, and the governing detention statutes and regulations.

5. Petitioner seeks immediate habeas relief, including:

   (i) an order prohibiting transfer,
   (ii) an order compelling Respondents to produce Petitioner and identify his precise location,
   (iii) an order compelling production of the DHS administrative record (A-file) and all arrest/custody documentation, and
   (iv) an order requiring a lawful custody determination within 24–48 hours or, in the alternative, Petitioner's immediate release.

PRELIMINARY STATEMENT

1. This is an emergency habeas case about a basic constitutional and statutory boundary: that the Government may not racially profile a person approach and detain them on a public street, demand to check their personal identity documents, arrest, search and seize them, without probable cause, or presenting a warrant or articulating lawful cause, and then detain them indefinitely without ever conducting a prompt, individualized custody determination prior to or contemporaneously with the arrest, as required by the federal immigration detention statutes and constitutional due process.[2]

---

[2] See in this district *Kelly v. Almodovar,* and many other cases *(*"ICE must allow the noncitizen to demonstrate to the satisfaction of the officer that [ ] release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding. *"Kelly v. Almodovar*, No. 25-CV-6448, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (Torres, J.). In *Gopie v. Lyons*, Judge Bulsara held that "before the Government may exercise such discretion to detain a person, Section 1226(a) and 8 C.F.R. § 1236.1(c)(8) require ICE officials to make an individualized custody determination," and that such a determination must

2

2.      Immigration detention is a profound deprivation of liberty, and due process demands meaningful safeguards at the moment the Government chooses to restrain someone's freedom.

3.      Courts in this District repeatedly grant habeas relief where ICE detains people without making the individualized assessment that § 1226(a) and the implementing regulations require, and where ICE attempts to justify detention after the fact rather than through contemporaneous process. See, e.g., *Lopez Benitez v. Francis*, No. 25 Civ. 5937, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025) (Ho, J.) (granting habeas relief; explaining that due process must constrain the Government's wide discretion to detain under § 1226(a)); *Kelly v. Almodovar*, No. 25 Civ. 6448, 2025 WL 2381591 (S.D.N.Y. Aug. 15, 2025) (Torres, J.) (ordering immediate release where ICE's process was defective and stressing that post-hoc "re-determination" is not a substitute for initial deliberative custody decision); *Valdez v. Joyce,* No. 25 Civ. 4627, 2025 WL 1707737 (S.D.N.Y. June 18, 2025) (Daniels, J.) (granting habeas; ordering immediate release in a re-detention/no-process scenario); *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528, 2025 WL 1927931 (S.D.N.Y. July 13, 2025) (Torres, J.) (granting habeas; ordering immediate release); *Gonzalez v. Joyce,* No. 25 Civ. 8250, 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025) (Torres, J.) (granting relief and rejecting detention practices inconsistent with lawful process).

4.      Petitioner is currently detained at Orange County Correctional Facility and has been put in Removal Proceedings.

5.      Petitioner therefore seeks immediate judicial intervention to prevent transfer, compel disclosure, require production of crucial immigration detention documents and

---

occur "before or contemporaneous with detaining a noncitizen." No. 25-CV-05229 (SJB), slip op. at ___ (E.D.N.Y. Nov. 13, 2025).

enforce the statutory and constitutional requirement of a prompt, individualized custody determination.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is in federal custody under the color of United States authority and challenges the legality of that custody as unconstitutional and in violation of statute and regulation.

7. Venue is proper in the Southern District of New York because Petitioner was seized in New York, is currently detained at Orange County Correctional Facility.

8. This Court has authority to issue a temporary restraining order and preliminary injunctive relief "as law and justice require," including to prevent transfer that would impair the Court's jurisdiction and ability to order effective habeas relief.

## PARTIES

9. Petitioner HENRY ULICE GUTIERREZ GIRON is a national of Guatemala present in the United States.

10. He has resided in New York for twelve years, has a fixed address, and has no criminal charges.

11. Petitioner's permanent address is 16 Old Pawling Rd. Pawling, NY 12564.

12. Respondent Kenneth Genalo is the NYC Director of Enforcement & Removal Operations, ICE, and is a legal custodian of Petitioner.

13. Respondent Todd Lyons is the Acting Director of ICE and is responsible for ICE detention policies and practices.

14. Respondent Kristi Noem is the Secretary of the Department of Homeland Security and is responsible for DHS policies and enforcement practices affecting detention.

4

15.     Respondent Pamela Bondi is the Attorney General of the United States and is sued in her official capacity in connection with the federal custody at issue.

## FACTUAL ALLEGATIONS

16.     **On the morning of January 13, 2026, Petitioner was waiting outside of a restaurant to be picked up by his boss to go to his place of employment, where he works in landscaping in Pawling, NY. A vehicle approached him, and two officers got out of the car. Petitioner was stopped and apprehended by individuals later identified as ICE officers. One officer asked the Petitioner if he was a U.S. citizen or if he had documents. Petitioner nervously responded that he is not a US Citizen and did not have documents.**

17.     This occurred in front of La Guadalupana, located at 29 Memorial Ave. Pawling, NY 12564.

18.     The officers did not present a warrant, did not articulate any lawful basis for the stop or arrest, and did not advise Petitioner of any rights.

19.     Petitioner cooperated and engaged in no criminal conduct. Nevertheless, he was taken into custody, transported to an ICE facility, and remains detained.

20.     Petitioner has no criminal charges.

21.     Petitioner is detained without any meaningful opportunity to request release, and without any contemporaneous individualized custody determination as required by the detention statutes and implementing regulations.

22.     Petitioner's warrantless street arrest and continued detention are arbitrary and unlawful, effected without due process of law and in violation of the Fourth and Fifth Amendments and the immigration detention statutes and regulations.

CLAIMS FOR RELIEF

CLAIM ONE

UNLAWFUL WARRANTLESS SEIZURE AND ARREST IN VIOLATION
OF THE FOURTH AMENDMENT AND 8 U.S.C. § 1357 (A) (2)

23. The Fourth Amendment applies to civil immigration arrests in the interior of the United States.

24. Warrantless civil immigration arrests are strictly limited, including by 8 U.S.C. § 1357(a)(2), which permits warrantless arrest only when statutory prerequisites are satisfied, including probable cause and the likelihood of escape.

25. Here, ICE officers stopped Petitioner on a public street while he was waiting at a stop to be picked up by his boss, presented no warrant, articulated no probable cause, and provided no lawful basis for seizure. Petitioner's arrest was therefore unreasonable under the Fourth Amendment and ultra vires as a matter of statutory authority.

26. Petitioner's detention is the direct fruit of an egregious Fourth Amendment violation. ICE agents initiated a seizure while Petitioner stood outside a Hispanic-identified deli, without individualized reasonable suspicion and based solely on appearance, ethnicity, and location. The Second Circuit has made clear that race-based immigration seizures constitute egregious constitutional violations requiring meaningful judicial remedies. *Cotzojay v. Holder*, 725 F.3d 172 (2d Cir. 2013); *Pretzantzin v. Holder*, 736 F.3d 641 (2d Cir. 2013). The Supreme Court has likewise held that ethnic appearance cannot supply reasonable suspicion. *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975). Because ICE custody flows directly from this unconstitutional seizure, continued detention is unlawful and habeas relief is required to prevent the government from benefiting from racially discriminatory enforcement.

CLAIM TWO

DETENTION WITHOUT A CONTEMPORANEOUS, INDIVIDUALIZED CUSTODY DETERMINATION VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT AND 8 U.S.C. § 1226(A) AND IMPLEMENTING REGULATION.

27. In *Lopez Benitez v. Francis*, Judge Ho explained that § 1225(b)(2)(A) "requires mandatory detention of certain noncitizens' seeking admission' to the country," while § 1226(a) supplies "discretionary authority to detain other noncitizens who are 'already in the country.'" 2025 WL 2371588, at *4 (S.D.N.Y. Aug. 13, 2025). In other words, DHS cannot collapse the INA's two detention tracks to transform an interior apprehension into a border-inspection detention regime.

28. Judge Torres applied that same rule in *Gonzalez v. Joyce*, holding that the petitioner was "not subject to mandatory detention as a noncitizen 'seeking admission' … under 8 U.S.C. § 1225, but rather may be subject to detention only on a discretionary basis under § 1226," expressly relying on *Samb v. Joyce*, 2025 WL 2398831, at *3 (S.D.N.Y. Aug. 19, 2025).

29. Section 1226(a) authorizes discretionary detention or release pending removal decisions. Because the Government has broad discretion to decide whether to detain, due process requires procedures that constrain arbitrary detention and ensure that discretion is actually exercised through an individualized assessment. See *Lopez Benitez v. Francis*, 2025 WL 2371588, at *10 (S.D.N.Y. Aug. 13, 2025) (Ho, J.) (explaining that due process must account for the Government's wide discretion to arrest and detain under § 1226(a)).

30. The governing regulatory scheme requires a prompt custody determination following arrest. ICE must decide—based on individualized facts—whether detention is

necessary and whether release conditions can reasonably assure appearance and safety.

31. Courts in this District have held that when ICE detains a person but cannot show a contemporaneous, individualized custody determination, detention violates due process and the statutory/regulatory detention framework, and habeas relief is warranted. See *Barco v. Francis*, 25-cv-6582 *(*S.D.N.Y. November 26, 2025). *Barco* confirms that ICE may not justify detention through post-hoc statutory characterizations where the initial seizure occurred without constitutionally adequate process. Judge Kaplan held that the legality of immigration detention must be assessed at the moment DHS deprives a person of liberty, and that later administrative proceedings cannot retroactively cure a procedurally defective arrest. Emphasizing the fundamental liberty interest at stake, the Court rejected the Government's argument that subsequent custody proceedings could legitimize detention imposed without notice, an opportunity to be heard, or a contemporaneous, individualized determination. *Barco v. Francis*, 25-cv-6582 *(*S.D.N.Y. November 26, 2025).

32. In *Kelly v. Almodovar* 25-cv-06448 (S.D.N.Y. Aug. 15, 2025), Judge Torres emphasized that an immigration-judge bond proceeding is a custody "re-determination" and is not a substitute for ICE's obligation to make the initial custody decision through a deliberative process prior to or contemporaneous with the loss of liberty. *Kelly,* 2025 WL 2381591, at *3. "Such hearings, however, are provided for the purpose of custody re-determination — a hearing held by an immigration judge after ICE makes its initial decision to detain. Such a hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous

8

with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Kelly*, 2025 WL 2381591, at *3.

33. Courts in this Circuit have made clear that the Government may not exercise discretionary detention authority under 8 U.S.C. § 1226(a) unless ICE has first made an individualized custody determination in compliance with its own regulations. In *Gopie v. Lyons*, Judge Bulsara held that "before the Government may exercise such discretion to detain a person, Section 1226(a) and 8 C.F.R. § 1236.1(c)(8) require ICE officials to make an individualized custody determination," and that such a determination must occur "before or contemporaneous with detaining a noncitizen." No. 25-CV-05229 (SJB), slip op. at ___ (E.D.N.Y. Nov. 13, 2025). Where ICE arrests first and purports to justify detention later, the detention is unlawful ab initio.

34. As *Gopie* explains, the regulation requires that ICE permit the noncitizen to demonstrate that release would not pose a danger to persons or property and that the noncitizen is likely to appear for future proceedings. A post-hoc custody assessment, performed after arrest and without the participation of the noncitizen, does not satisfy the statutory or regulatory scheme. Because ICE failed to make a custody determination prior to, or at the moment of, detention, the agency acted outside the bounds of § 1226(a) discretion, rendering the detention unlawful. The decision underscores that post-hoc paperwork is not a cure for a liberty deprivation already inflicted without lawful process. *Gopie* further explains—citing SDNY precedent—that habeas is available to remedy a defect in the process governing detention under § 1226(a).

9

35. Here, the Petitioner has a fixed residence, no criminal charges, longstanding ties, and a stable address. The Government's failure to make, document, and provide any contemporaneous individualized custody determination renders this detention arbitrary and unlawful.

36. Respondents cannot lawfully recharacterize Petitioner's street arrest in Pawling NY, as detention of certain noncitizens "seeking admission"—i.e., the statutory framework for inspection and admission—whereas § 1226(a) governs discretionary detention of noncitizens already present in the United States pending removal proceedings.

## CLAIM THREE

### FAILURE TO FOLLOW MANDATORY DETENTION REGULATIONS AND PROCEDURES RENDERS CUSTODY UNLAWFUL UNDER ACCARDI

37. Under *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), when an agency fails to follow its own binding regulations that are intended to protect individual rights, agency action is unlawful.

38. The immigration detention scheme contains mandatory procedural protections for arrest processing and custody determinations. Where ICE fails to comply with those procedures—especially in the immediate aftermath of a warrantless arrest—continued detention is unlawful and habeas relief is warranted.

39. SDNY courts have repeatedly granted habeas relief and ordered immediate release when DHS/ICE's process is defective, and the Government cannot show lawful custody authority and meaningful process. See, e.g., *Chipantiza-Sisalema v. Francis*,

2025 WL 1927931 (S.D.N.Y. July 13, 2025) (ordering immediate release); *Valdez v. Joyce*, 2025 WL 1707737 (S.D.N.Y. June 18, 2025) (ordering immediate release).

### CLAIM FOUR

### IMMEDIATE RELEASE IS THE PROPER HABEAS REMEDY; A BELATED BOND HEARING DOES NOT CURE AN ALREADY-COMPLETED CONSTITUTIONAL STATUTORY VIOLATION

40. The "typical remedy" for unlawful executive detention is release. See *Munaf v. Geren,* 553 U.S. 674, 693 (2008), as applied by SDNY courts in this line of cases. See, e.g., *Tumba Huamani v. Francis*, 2025 WL 3079014 (S.D.N.Y. Nov. 4, 2025) (granting habeas; ordering immediate release).

41. In 2025, SDNY decisions have repeatedly rejected the notion that a later immigration-court proceeding cures the absence of a lawful initial custody decision by ICE. *Kelly* explains that a bond hearing is not a substitute for ICE's initial deliberative decision. *Kelly,* 2025 WL 2381591, at *3.

42. The government may argue that release is inappropriate because petitioner has not requested a bond hearing before an immigration judge. That argument fails. Exhaustion is not required in cases where there's an impermissible constitutional violation from the get-go. As the *Gopie* court said: Respondents' exhaustion argument fails because, as Judge Bulsara explained, "a bond hearing before an immigration judge is a 're-determination' of custody—it assumes that a valid custody determination was made in the first instance." *Gopie v. Lyons*, at 6. Where, as in *Gopie*, ICE's initial "custody" determination was made "after-the-fact," that procedural defect is itself dispositive: "Here, Gopie's 'custody' determination was made after-the-fact. That alone makes it invalid." *Id.* at 6. Accordingly, the petitioner is not required to pursue administrative

11

steps premised on a lawful initial determination because "Gopie is not required to exhaust a process that was deficient from the outset." *Id.* at 6.

43. Petitioner therefore seeks immediate habeas relief that is effective now, including release absent proof of lawful arrest authority and a contemporaneous, individualized custody determination.

## CLAIM FIVE

### EXHAUSTION IS NOT REQUIRED BECAUSE RELIEF IS URGENT AND ADMINISTRATIVE REMEDIES ARE INADEQUATE AND FUTILE

44. The government may argue that release is inappropriate because the petitioner has not requested a bond hearing before an immigration judge. That argument, too, fails. Exhaustion is not required in cases where there's an impermissible constitutional violation from the get-go. As the *Gopie* court said: Respondents' exhaustion argument fails because, as Judge Bulsara explained, "a bond hearing before an immigration judge is a 'redetermination' of custody—it assumes that a valid custody determination was made in the first instance." *Gopie v. Lyons*, at 6. Where, as in *Gopie*, ICE's initial "custody" determination was made "after-the-fact," that procedural defect is itself dispositive: "Here, Gopie's 'custody' determination was made after-the-fact. That alone makes it invalid." *Id.* at 6. Accordingly, the petitioner is not required to pursue administrative steps premised on a lawful initial determination because "Gopie is not required to exhaust a process that was deficient from the outset." *Id.* at 6.

45. Exhaustion is prudential in many immigration habeas contexts and is not required where administrative remedies are inadequate, futile, or incapable of addressing the constitutional injury at issue.

46. The gravamen here is the Government's warrantless seizure and detention, without a contemporaneous, individualized custody determination and without even disclosing Petitioner's location. Administrative bond processes cannot retroactively supply the constitutional prerequisites for a street seizure, cannot cure a completed due-process violation, and cannot restore the statutory requirement that ICE exercise individualized discretion at the moment it deprives a person of liberty.

## CLAIM SIX

### DUE PROCESS REQUIRES IMMEDIATE PRODUCTION OF THE DHS ADMINISTRATIVE RECORD, INCLUDING THE A-FILE, ARREST DOCUMENTATION, AND CUSTODY RECORDS

47. Meaningful habeas review is impossible where the Government refuses to disclose where it is holding the detainee and withholds the basic record of arrest and custody authority. Petitioner seeks prompt production of the DHS administrative record, including the A-file, Form I-200/I-286 (if any), any NTA (if any), any "Notice of Custody Determination," any custody classification notes, any statements or reports by arresting officers, and any transfer orders.

48. Courts regularly compel production of materials necessary to test the legality of custody in expedited habeas proceedings, particularly where detention is ongoing and irreparable harm is accruing daily.

49. Justice Fortas wrote, in *Harris v. Nelson,* 394 U.S. 286, 300 (1969 [. *Harris* at 394. W]here specific allegations before the court show reason to believe that the petitioner

13

may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is <u>the duty of the court to provide the necessary facilities and procedures for an adequate inquiry</u>. Justice Fortas expounded:

> "The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action. Its preeminent role is recognized by the admonition in the Constitution that: "The Privilege of the Writ of Habeas Corpus shall not be suspended. . . ." U.S.Const., Art. I, § 9, cl. 2. The scope and flexibility of the writ -- *its capacity to reach all manner of illegal detention -- its ability to cut through barriers of form and procedural mazes* -- have always been emphasized and jealously guarded by courts and lawmakers. *The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.* As Blackstone phrased it, habeas corpus is "the great and efficacious writ, in all manner of illegal confinement."As this Court said in *Fay v. Noia,* (1963), the office of the writ is "to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints." *See*
> the reach of reasonable dispute that the federal courts not only may grant evidentiary hearings to applicants, but must do so upon an appropriate showing. *Townsend v. Sain,* And this Court has emphasized, taking into account the office of the writ and the fact that the *petitioner, being in custody, is usually handicapped in developing the evidence needed to support in necessary detail the facts alleged in his petition, that a habeas corpus proceeding must not be allowed to founder in a "procedural morass*." *Price v. Johnston,* 334 U. S. 266, 334 U. S. 269 (1948). There is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law. This Court has insistently said that the power of the federal courts to conduct inquiry in habeas corpus is equal to the responsibility which the writ involves: "*The language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary.*" *Townsend v. Sain, supra* at 372 U. S. 312. *Harris* at 394. (citations omitted; italics supplied.)

50. In this emergency § 2241 proceeding, Petitioner cannot meaningfully challenge the legality of DHS's post-arrest custody determination unless the Government is required to produce the operative detention records and the records ICE relies upon to justify detention.

14

51. Federal courts addressing immigration habeas petitions routinely require the Government to disclose ICE records relevant to detention on an expedited schedule. See *Ye v. Maldonado*, No. 1:25-cv-06417 (E.D.N.Y. Dec. 8, 2025) (noting that the Court ordered the Government to 'produce the ICE records to which it referred in its filing' on an expedited deadline). See also *Ulloa Montoya v. Bondi*, No. 2:25-cv-06363 (JMA) (E.D.N.Y. Nov. 25, 2025) (ordering Respondents to 'produce to the Court all immigration forms and records referenced' in the Government's declaration).

## REQUEST FOR RELIEF

WHEREFORE, Petitioner respectfully requests that the Court:

A. Issue an Order to Show Cause and Temporary Restraining Order prohibiting Respondents from transferring Petitioner into or out of this District and the United States of America.

B. Ordering Respondents to produce Petitioner forthwith before this Court;

C. Ordering Respondents to produce the DHS administrative file and all arrest/custody and transfer records immediately;

D. Granting the writ of habeas corpus and ordering Petitioner's immediate release;

E. Granting such other relief as the Court deems just and proper.

/;Respectfully submitted,

*/s/ S. Michael Musa Obregon*

S. Michael Musa-Obregon, Esq.
Counsel for Petitioner
Musa Obregon Law, PC
140 Grand Street, Suite 307

15

White Plains, NY 10601
914-380-1436
Michael@musa-obregon.com

Dated: January 20, 2026
New York, NY